# THE INTREPID.[1]

## NASSAU FERRY Co. *v.* THE INTREPID.

*(District Court, S. D. New York. November 11, 1891.)*

1. COLLISION—STEAM-VESSELS CROSSING—KNOWLEDGE BY ONE OF SAGGING COURSE OF THE OTHER—DUTY TO REVERSE.

The tug I., with two heavy floats along-side, was proceeding at night, at full speed, against the ebb-tide, up the East river. Her floats extended 100 feet ahead of her. They had no bow-lights, such as similar boats mostly carry, but carried vertical lights 218 feet aft, near their sterns. When the tow was about off South Fifth street, Brooklyn, the ferry-boat J. started from her slip on the Brooklyn side of the river, at full speed, and with her helm a-port, as was her custom on the ebb. When half out of the slip, the green light of the tug came in view, and the pilot of the

[1] Reported by Edward G. Benedict, Esq., of the New York bar.

ferry-boat gave one whistle, and put her helm hard a-port. The tug also gave one whistle, slowed her engines, and in 20 seconds stopped them, and 20 seconds afterwards reversed; but her port float collided with the ferry-boat. The position of the ferry-boat and her course were known to the tug. The ferry-boat was not so well able to judge of the position or distance of the tow. *Held*, that the tug, having the ferry-boat on her starboard hand, and having exchanged one whistle with her, was bound to keep out of the way, and, knowing the sagging course of the ferry-boat in the ebb-tide, should have reversed at once on giving one whistle, and was in fault for the collision; that the ferry-boat did all that was required of her, and was not liable.

2. SAME—EAST RIVER—IMPRUDENT NAVIGATION.

It is imprudent navigation for a tug, with heavy floats, projecting 100 feet ahead of her, without bow-lights, to go at a speed of 6 knots, within 200 feet of the Brooklyn piers in the East river, towards ferry-slips that are obscured.

In Admiralty. Suit to recover damages caused by collision.

*Shipman, Larocque & Choate*, for libelant.

*Carpenter & Mosher*, for respondent.

BROWN, J. A little before 7 o'clock on the evening of February 4, 1891, the libelants' ferry-boat, Jamaica, shortly after leaving her slip at Grand street, Williamsburg, bound for the foot of Houston street, New York, came in collision with the port forward corner of car-float No. 1, which was in tow of the Intrepid, and on her port side, going up the East river, against the ebb-tide. The above libel was filed to recover for damages sustained through the collision. The Intrepid is a powerful tug, which left pier 45, East river, with two car-floats in tow, one upon each side, each 240 feet long, projecting about 100 feet ahead of the tug, and each heavily loaded with 12 freight-cars, and bound for Wilson's point. The tug herself had no cars on her deck. The wind was fresh from the north-west. After passing Corlear's Hook the Intrepid met in succession a ferry-boat and two tows, one after the other, coming down nearly in the middle of the river, or a little towards the New York shore, all of which she passed in the neighborhood of South Seventh street, working her way over to within 200 feet, as her witnesses estimate, of the piers on the Brooklyn shore. She was proceeding at full speed, making about six knots per hour against the tide. The Jamaica, on starting to go out of her slip, had her view to the south near the shore obstructed by buildings on her port hand. When she was about half out of the slip, the green light of the Intrepid came in view, together with three pairs of vertical lights, which the tug and the two floats in tow carried near their sterns. The tug and tow were judged by the pilot of the Jamaica to be off about South Fifth street. The libel and the tug's witnesses state, and the answer admits that position of the tug and tow at the time when the red light of the Jamaica was seen coming out of the slip. A signal of one whistle was immediately exchanged between the two boats. The evidence is conflicting as to which boat gave the signal first, but that is immaterial, as all agree that the answer was given and heard at once. The Jamaica at that time was under the full speed of her engines, but had not acquired her full-speed headway. Her wheel was already to port, and on the exchange of signals was immediately put hard a-port, and so remained until the collision. The In-

trepid, on giving her signal of one whistle, slowed her engines, stopped them about 20 seconds afterwards, and reversed after another interval of about 20 or 30 seconds. The collision happened within 20 or 30 seconds after reversal, about abreast of the north side of the pier at South Second street, about 500 feet below the ferry-boat's point of departure, and about 250 feet from the end of South Second Street pier. The forward port corner of the port float struck the ferry-boat a little aft of amid-ships, and ran under her guard, but soon cleared, and each then went on her way. The tug and tows along-side were in all 99 feet wide. There are ten tugs regularly employed in transporting car-floats alongside up and down the East river, two of which belong to the claimant's line, namely, the Intrepid and the Express. All of these tugs, except the Express, take floats projecting a good deal beyond the tug; and all except the Intrepid and Express carry a white light on each of the projecting boats, on the outside corner in front, to indicate their position and extent, and do not carry vertical lights on the floats along-side, but on the tug only. Such has been their practice for a number of years past. The claimant's boats began running about two years ago. Their floats carry no head-lights, but carry two white vertical lights aft, and those on the Intrepid's two floats were 218 feet aft of the head of the tow, while the vertical lights of the tug were but about 25 feet ahead of those of the floats. The pilot of the Jamaica testified that, had he known that the tug and tow which he saw when he gave one whistle was the Intrepid, and that her boats projected so far ahead of her lights as afterwards appeared, he should not have given one whistle, but should have gone back into his slip. He also testified that he did not know that the tow he saw was that of the Intrepid, or that she was not in the habit of carrying head-lights on her tow, as the other tugs that carry projecting floats along-side are in the habit of doing. Not only from the admission in the answer, but from various circumstances in the evidence, I am satisfied that when the signal of one whistle was exchanged the tug and tow were about off South Fifth street; that is, about 800 or 900 feet from the point of collision. Had the Intrepid reversed when she gave her one whistle to the Jamaica, instead of waiting a considerable time before reversing, the collision would have been avoided, because she not only would have been stopped before reaching the track of the Jamaica, but the Jamaica would also have been from one to two lengths to the westward of the course of the Intrepid before the latter got near her. The Jamaica was on the starboard hand of the Intrepid; both were under way, and on crossing courses. The signals exchanged meant that the Jamaica should go ahead; and it was therefore the duty of the Intrepid to keep out of the way, both by the terms of the nineteenth rule of navigation, as she had the Jamaica on her starboard hand, (*The Narragansett*, 4 Fed. Rep. 244,) and also as a necessary consequence of the signals exchanged between them. The agreement made was a proper one for passing each other. The Intrepid could easily have kept out of the way, and the agreement imported that she would do so. It was her duty to use the proper and necessary means to do so. Any de-

lay in reversing was at her own risk if there was no subsequent fault in the Jamaica. The Intrepid, moreover, had knowledge of the precise place of the Jamaica, of the distance that separated them, and of her own power, and she was bound to make all necessary allowance for the sagging and winding course of the Jamaica under the well-known effects of the ebb-tide on coming out of her slip. *City of Springfield,* 29 Fed. Rep. 923, affirmed, 36 Fed. Rep. 568; *The John S. Darcy,* 29 Fed. Rep. 644, affirmed, 38 Fed. Rep. 619; *The Baltic,* 41 Fed. Rep. 603. Her delay in reversing was, therefore, the immediate cause of collision, and for this she must be held to blame. If the distance of the boats apart at the time the whistles were exchanged was not sufficient to enable the Intrepid to keep out of the way by reversing at once, then the two other faults of the Intrepid would become material, namely, her navigating without necessity so near to the Brooklyn shore, where the view of her was obstructed to the ferry-boat while leaving the slip, and her excessive speed of six knots in that situation, when so heavily loaded with floats; but, as the evidence leaves no doubt that there was plenty of time for the Intrepid to have kept out of the way by reversing at once after the exchange of signals, it is not necessary to dwell on these latter points. *The Titan,* 44 Fed. Rep. 510.

2. I do not think the evidence establishes any fault in the Jamaica. As the Intrepid was obscured from view when the Jamaica started from her slip, the latter was not in fault for starting; and, as she was half or two-thirds out of her slip, under full speed of her engines, and pursuing her usual course, when the Intrepid first became visible close to the Brooklyn shore, she was under no obligation to return to her slip, simply to accommodate the Intrepid, which was on her port hand, if the Intrepid was able to keep out of the way. The immediate exchange of signals in accordance with the rule of the local inspectors determined the obligations of both vessels, namely, that of the Jamaica to go ahead, and that of the Intrepid to reverse at once, if she could not otherwise avoid collision. Although the pilot of the Jamaica might, in the exercise of great prudence, have gone back if he had known that the Intrepid's tow projected as far ahead of her lights, I do not see how this affects the Jamaica with fault in the absence of that knowledge. As the situation appeared to the pilot of the Jamaica, there was plenty of room for her to pass ahead in accordance with the signals exchanged, and that was also the fact. The Jamaica did all that was required of her in putting her wheel at once hard a-port, and, when the projecting tow became first visible, giving another jingle for extra speed. The practice of the Intrepid not to carry head-lights on her tow, which differed from all the other tugs that carried car-floats projecting far ahead, was not brought home to the pilot's knowledge; and no such special habit of the Intrepid affected him with presumptive knowledge of her practice without actual notice of it. As respects the case generally, it should be said that the navigation of the Intrepid at full speed so near the Brooklyn shore with heavy floats projecting so far ahead of her without head-lights, and with tow-lights so far astern, was imprudent navigation.

When the whistles were exchanged the pilot of the Intrepid knew precisely all the facts and circumstances affecting the situation, whereas the pilot of the Jamaica did not know them. It was the duty of the Intrepid in that situation to have exercised corresponding care, and to have reversed at once. Nothing prevented her from doing so. As the Jamaica failed in no duty, the blame of the collision must rest wholly upon the Intrepid. Decree for libelant, with costs.